**In re William Anthony SEITZ, Rachel Marie Seitz, Debtors.**

No. 00–60542.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Feb. 5, 2002.

Bradley K. Baker, Yvonne Lundwall Twiss, Porter, Wright, Morris & Arthur, Columbus, OH, for First National Bank of New Holland.

Amy Kerns Bidwell, Kerns & Kerns, Columbus, OH, for Debtors.

Myron N. Terlecky, Rhiel & Terlecky, Columbus, OH, Chapter 7 Trustee.

## *OPINION AND ORDER ON DEBTORS' MOTION TO DISMISS THEIR CASE SUBJECT TO NOTICE TO CREDITORS AND OPPORTUNITY TO OBJECT*

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the debtors' motion to dismiss their chapter 7 case. The trustee in bankruptcy opposed that motion and the Court heard the matter on October 16, 2001. After testimony was taken at that hearing, the Court ordered a representative from The First National Bank of New Holland ("Bank") to appear and testify. That additional testimony was taken on January 8, 2002, and the matter is now ready for decision. Also pending is a motion by the trustee to compel the debtors to appear for a meeting of creditors as required by 11 U.S.C.

§ 343. That motion will be ruled on by separate order.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core matter which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(A) and (O).

The problems in this case have been caused by unauthorized actions of the debtors and the Bank during a pending bankruptcy case. The result of those actions leaves the Court with a difficult dilemma.

The Court finds the following facts from consideration of testimony and exhibits and judicial notice of various schedules and filings in this case. The various dates are included because they are significant in this matter.

On November 16, 2000 the debtors filed a petition under chapter 7 of the Bankruptcy Code. They attended a meeting of creditors on December 22, 2000. Within a short time after that meeting, the trustee in bankruptcy called the Bank and advised it that the trustee would challenge the Bank's lien against the debtors' 1996 Oldsmobile. Two months later, on February 26, 2001, the debtors moved to convert their case to chapter 13. The reason stated for that request was that they wanted to retain the vehicle which the trustee was intending to sell upon avoiding the Bank's lien. The Court ordered the conversion to chapter 13 on March 21, 2001.

The debtors then attended a meeting of creditors on May 30, 2001 to answer questions from creditors and the chapter 13 trustee about their proposed plan. The Bank attended that meeting through its attorney. On June 5, 2001 the debtors moved to reconvert their case to chapter 7 because their inability to make the proposed monthly payments of $220 each month made their plan unfeasible. The Bank also objected to confirmation of the proposed plan. On June 18, 2001 the Court reconverted the debtors' case to chapter 7. A notice of that reconversion and of the date for the meeting of creditors in the reconverted case was mailed to the Bank and separately to its outside counsel on June 27, 2001. Neither the debtors, their attorney nor the Bank appeared at the meeting of creditors on July 23, 2001. The debtors did not request a rescheduling of that meeting and on August 31, 2001, the trustee moved to compel their attendance at a rescheduled date and sought compensation for expenses incurred in filing that motion. On September 6, 2001 the debtors opposed the trustee's motion and also filed a motion seeking to dismiss their case.

In their motion to dismiss the debtors revealed for the first time that they were "negotiating" to pay their creditors outside of bankruptcy. Such "negotiations" were illustrated by an attachment of copies of 13 cashier's checks the Bank had issued for prepetition obligations.

At the first hearing on the debtors' motion to dismiss and the trustee's motion to compel attendance, testimony established that the debtors had gone to an officer of the Bank in June 2001 and had executed two sets of loan documents. One loan consolidated two prior vehicle loans and one was to pay their unsecured and priority creditors. Mr. Seitz's father guaranteed the creditor repayment loan. The Bank then issued cashier's checks on account of a priority child support arrearage debt and on account of certain other unsecured obligations. Because the Bank was not present at the hearing where these actions were discussed, the Court set a continued date for a representative of the Bank to appear.

Testimony at the later hearing revealed that the Bank had paid itself for two existing car loans and had perfected the security interests given by the debtors for the rewritten car loans. The Bank's representative further testified that the debtors had told him they were no longer in bankruptcy. The Bank never verified that information and, indeed, was participating in the chapter 13 case through its counsel and receiving notice of the reconversion to chapter 7 at or near the time the new loans were being offered and the amounts to be paid to unsecured creditors were being determined.

The Bank claims that the debtors misrepresented the status of their case. The Bank admitted, however, that it never verified that status, that the debtors' credit report did not show a dismissal and that it knew any order dismissing a bankruptcy case would be sent to the Bank.

Frankly, the Court is hard-pressed to find a truly equitable solution to the problems created by the debtors' and the Bank's actions. Many, but not all, of the debtors' creditors have been paid. The amounts paid may not be the same as what would have been paid by the trustee. If the debtors get their wish to dismiss, they will not get a discharge, but they will have much more debt than when they filed bankruptcy. The debt for the two postpetition notes is at least $44,000 plus interest between 11.4% and 12.5% (or possibly at the 25% default rate). Those obligations will have to be paid over many years. The Bank will have cured its lien problem at the expense of the trustee and through stay violations. The trustee will have lost his compensation from any successful lien avoidance, and there are some creditors not yet paid.

The Court believes the Bank saw a way to avoid the loss it would suffer through a lien avoidance. It also may have believed it was "helping" the debtors. The Bank's presence in the rural area where the debtors live gives it great leverage with residents in possible need of future loans. Certainly this Court does not wish to discourage debtors from paying their debts. The series of actions taken in this case, however, is not a proper way to attain that objective.

■■■■ To resolve this matter, the Court will be forced to unwind, as much as possible, what has been done. That means that the debtors' motion to dismiss their case must be denied and the Bank's postpetition loans must be nullified. Certainly the debtors had no authority to pledge property of the bankruptcy estate to secure the vehicle loan from the Bank. To the extent unsecured creditors have been appropriately paid by the Bank through the second loan, such payments will be permitted to remain and the Bank will be given credit for those payments. "Appropriately paid," however, means payment in a correct amount to a creditor which has properly and timely filed a proof of claim with the clerk. The "correct amount" will be equal to what the creditor would receive as a dividend if it were paid with other proper claimants by the trustee. Credit will not be given to the extent the Bank overpaid, or paid those creditors who have not filed proper and timely proofs of claim. It will be up to the Bank, at its own election, to recover any erroneous payments.

■■■■ The trustee played no role in any of the questionable actions. Therefore, if he is successful in his lien avoidance action, he will be entitled to compensation pursuant to 11 U.S.C. § 326 for the Bank's proper payments to unsecured creditors, as if the trustee himself had made such payments. The trustee shall also be entitled to compensation from the estate for services in bringing his motion to compel the debtors' attendance and in attending

and participating in the two hearings. If the lien avoidance action is successful, any payment to the Bank on its claim related to that matter will be subordinated to the payment of other allowed unsecured claims. If the lien avoidance action is not successful, the parties should ask the Court for a reconsideration of this order.

The Court notes that the debtors never properly served their motion to dismiss on all parties. Therefore, this proposed ruling will be sent to all parties and will serve as a notice and opportunity to object to the motion. Any such objections must be specific as to reason, however. It will not be a valid objection that a creditor was paid who should not have been. If there are no objections, this order will become final.

**IT IS SO ORDERED.**